IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA D. STINE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO.  21-5492 |
| Commissioner of Social Security | : | |

**<u>MEMORANDUM AND ORDER</u>**

ELIZABETH T. HEY, U.S.M.J.                                              May 15, 2023

Lisa D. Stine ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final decision denying her application for disability insurance benefits ("DIB").  For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and remand for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.     <u>PROCEDURAL HISTORY</u>

Plaintiff applied for DIB on August 12, 2019, alleging disability beginning on July 29, 2019, as a result of conversion disorder, anxiety, sensory overload, Lyme disease, thyroid disorder, speech problems, leg paralysis, migraines, chronic fatigue, and memory problems.  <u>Tr.</u> at 425, 445, 459.[1]  Her application was denied initially and on reconsideration.  <u>Id.</u> at 320-29, 331-44.  At her request, an administrative hearing was

---

[1]To be entitled to DIB, Plaintiff must establish that she became disabled on or before her date last insured ("DLI").  20 C.F.R. § 404.131(b).  The Certified Earnings Record indicates and the ALJ found that Plaintiff was insured through December 31, 2024.  <u>Tr.</u> at 269, 436.  I note that the initial Disability Report erroneously indicates that Plaintiff's DLI is December 31, 2023.  <u>Id.</u> at 445.

held before an ALJ on January 26, 2021.  Id. at 293-319.  On March 1, 2021, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  Id. at 267-86. The Appeals Council denied Plaintiff's request for review on October 20, 2021, id. at 1-4, making the ALJ's March 1, 2021 decision the final decision of the Commissioner.  20 C.F.R. § 404.981.

Plaintiff commenced this action in federal court on December 16, 2021.  Doc. 1. The matter is now fully briefed and ripe for review.  Docs. 8-10.[2]

## II.   LEGAL STANDARD

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusions that Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla."  Zirnsak v. Colvin, 777 F.2d 607, 610 (3d Cir. 2014) (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)).  The court has plenary review of legal issues.  Schaudeck, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[2]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  See Standing Order – In Re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Doc. 6.

impairment . . . which has lasted or can be expected to last for . . . not less than twelve months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process, evaluating:

> 1.     Whether the claimant is currently engaged in substantially gainful activity ("SGA");
>
> 2.     If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities;
>
> 3.     If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the "listing of impairments" ["Listings"], 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4.     If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and
>
> 5.     If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak, 777 F.3d at 610; see also 20 C.F.R. § 404.1520(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007); see also Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues.  Schaudeck, 181 F.3d at 431.

III.   **DISCUSSION**

Plaintiff was born on March 13, 1990, and thus was twenty-nine years of age at the time of her alleged disability onset date (July 29, 2019) and thirty at the time of the ALJ's decision (March 1, 2021). <u>Tr.</u> at 310, 320.  She is five feet, ten inches tall, and weighs approximately 200 pounds. <u>Id.</u> at 459.  Plaintiff lives in a townhouse with her husband. <u>Id.</u> at 309, 486.  She obtained a GED and has past work experience as a lab assistant, price accuracy coordinating assistant, server, barista, and waitress. <u>Id.</u> at 310-12, 447, 475.

A.   **ALJ's Findings and Plaintiff's Claims**

In the March 1, 2021 decision under review, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date of July 29, 2019. <u>Tr.</u> at 269.  At step two, the ALJ found that Plaintiff suffers from the severe impairments of conversion disorder with mixed symptoms, migraines, unspecified somatoform disorder, and adjustment disorder with anxiety. <u>Id.</u> at 270.[3]  The ALJ identified Plaintiff's mild to moderate hypertrophy in the lumbar spine as a non-severe impairment due to a lack of imaging or treatment records after Plaintiff's onset date. <u>Id.</u>  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. <u>Id.</u>  Furthermore, in reviewing the "paragraph B" criteria of the relevant mental health Listings, the ALJ found that Plaintiff had moderate limitation in the areas of

---

[3]Where appropriate, Plaintiff's impairments will be defined in the medical evidence summary.

4

interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself; and a mild limitation in the area of understanding, remembering, or applying information.  Id. at 271-72.

In her RFC assessment, the ALJ determined that Plaintiff retains the RFC to perform a full range of work at all exertional levels, except that she is limited to occasional interaction with supervisors, the general public, and coworkers; can do no work involving shared tasks with coworkers; is restricted to work in a low stress job, defined as having only occasional decision making and only occasional changes in the work setting; can perform simple, routine tasks at a consistent pace but not a production-rate pace; is restricted to noise at a moderate level; and can have no exposure to flashing or bright lights.  Tr. at 273.  The ALJ found that Plaintiff could not perform any of her past relevant work.  Id. at 284.  In consideration of Plaintiff's age, education, work experience, and RFC, and the testimony of a vocational expert ("VE"), the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as cleaner of lab equipment, routing clerk, and document preparer.  Id. at 285.  As a result, the ALJ concluded that Plaintiff was not disabled.  Id.

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because (1) the ALJ erroneously failed to include Plaintiff's inability to perform "detailed instructions," and failed to explain why, and (2) the RFC exceeds Plaintiff's abilities as established by the medical opinions of record.  Docs. 8 & 10.  Defendant counters that the ALJ's RFC determination is supported by substantial evidence.  Doc. 9.

### B.   Medical Evidence Summary[4]

Plaintiff was diagnosed with Lyme disease in 2008, followed six years later by the first of several additional physical and mental health diagnoses, including depressive disorder (first diagnosed in January 2014), conversion disorder (first diagnosed in October 2014), and anxiety (no initial diagnosis date noted).   Tr. at 722, 747, 770.[5]

On July 25, 2019 -- four days before Plaintiff's alleged disability onset date -- Plaintiff saw William S. Harriman, PA-C, of the Lehigh Valley Physician Group for Family and Internal Medicine, regarding her complaints of leg pain, limping, and an abnormal brain MRI from 2017.  Tr. at 716-40.  Plaintiff reported that her relevant past medical history included diagnoses of anxiety, conversion disorder, depressive disorder, memory loss, and migraine without aura, and that she was not taking any medications.

---

[4]Because Plaintiff's RFC claims are limited to the ALJ's consideration of Plaintiff's mental health impairments, the medical summary will focus on records pertaining to Plaintiff's mental health.  The diagnosis of Lyme disease is significant because Plaintiff later attributed that infection to the start of her problems, including her mental impairments.  See, e.g., tr. at 895.

[5]Conversion disorder (also known as functional neurological symptom disorder) is a somatic disorder in which there may be one or more motor and/or sensory symptoms not explained by neurological disorders, and may include weakness and paralysis, tremor or dystonic movements, gait abnormalities, abnormal limb posturing, and/or altered skin sensation, vision, or hearing.  Diagnostic and Statistical Manual of Mental Disorders, 5th ed. (2013) ("DSM-5"), at 319.  In the DSM-5, the category of Somatoform Symptom and Related Disorders, which includes conversion disorder, all "share a common feature: the prominence of somatic symptoms associated with significant distress and impairment."  Id. at 309.

Unspecified depressive disorder "applies to presentations in which symptoms characteristic of a depressive disorder that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning dominate but do not meet the full criteria for any of the disorders in the depressive disorders diagnostic class."  DSM-5 at 184.

Id. at 722.  Upon examination, PA Harriman observed Plaintiff's "[s]eemingly poor effort with movement in her hips and knees and that she was able to ambulate with reasonable effort," and found that Plaintiff exhibited "[n]o symptoms that I would feel comfortable medicating at this time," and recommended that Plaintiff follow-up with neurology.  Id. at 723.

On July 29, 2019, Plaintiff was hospitalized at Lehigh Valley Hospital – Cedar Crest regarding a chief complaint of weakness.  Tr. at 744.  Abnormalities in Plaintiff's MRI were noted, unchanged since 2017.  Id.  Plaintiff experienced two episodes of tachypnea and tachycardia while in the hospital, diagnosed as a panic attack, and she responded well to Ativan.  Id. at 744.[6]  A psychiatric consultant noted Plaintiff's frustration at not being able to identify an organic ideology of her symptoms.  Id. at 915. Plaintiff was discharged on August 1, 2019, in stable condition, with follow-ups planned with psychiatry and neurology.  Id.  at 744.  During an August 6, 2019 follow-up with Leanne G. Leckie, C.R.N.P., Plaintiff's diagnoses were listed as weakness in both legs, tachycardia, depressive disorder, and anxiety.  Id. at 741.

On October 19, 2019, Dmitry Khaitov, M.D., of Lehigh Neurology evaluated Plaintiff and prepared a medical source statement.  Tr. at 709-15.  Dr. Khaitov diagnosed Plaintiff with conversion disorder, ambulatory dysfunction, weakness in both legs, chronic migraines, and an abnormal MRI.  Id. at 709.  The doctor opined that Plaintiff had a severe limitation in dealing with work stress, and he identified depression and

---

[6]Ativan (generic lorazepam) is used to treat anxiety disorders.  See https://www.drugs.com/ativan/html (last visited Apr. 24, 2023).

anxiety as psychological conditions exacerbating Plaintiff's pain.  Id. at 710.  Dr. Khaitov

concluded that Plaintiff was "unable to work at this time," id. at 712, and that her

condition had persisted since her July hospitalization.  Id. at 715.

On October 22, 2019, Andrew Keenan, Psy.D., of the Center for Integrated

Behavioral Health, evaluated Plaintiff for a possible diagnosis of conversion disorder, on

referral from Plaintiff's psychiatrist, Dr. Courtney Chellew.[7]  Tr. at 894.  Plaintiff

reported that various neurological examinations and MRI tests had not identified a

neurological condition, and that her neurologist had opined that Plaintiff's symptoms may

be psychological in nature.  Id.  Plaintiff explained that she was frustrated with prior

medical opinions that her symptoms of conversion disorder were caused by depression or

anxiety, because she did not believe she struggles with anxiety or depression.  Id.  Dr.

Keenan noted that Plaintiff's symptoms began during antibiotic treatment for Lyme

disease eleven years prior, and that the symptoms persisted after she recovered from that

infection, despite no identifiable organic or neurological explanation.  Id. at 895.  On

examination, Plaintiff's mood appeared normal with appropriate affect; she had normal

speech and volume, with intact language skills and a noticeable stutter; she was fully

oriented; and her associations were intact, with "basically logical" thinking and

appropriate thought content, no signs of cognitive difficulty, normal attention span, intact

---

[7]Dr. Chellew's records indicate that her degree is a D.O.  See, e.g., tr. at 912, 914.

insight and judgment, and no signs of anxiety or hyperactivity.  Id. 896.  Dr. Kennan

diagnosed Plaintiff with adjustment disorder with anxiety.  Id.[8]

On November 27, 2019, Plaintiff saw Dr. Chellew for a psychiatric follow-up.  Tr.

at 912-16.  Plaintiff reported that therapy was going well overall, she denied anxiety or

depression, and she had not been taking her prescribed medication, which included

Concerta and Atarax.  Id. at 912.[9]  The doctor listed Plaintiff's psychiatric diagnoses as

generalized anxiety disorder ("GAD")[10] and conversion disorder, id., and noted past

medical diagnoses including depressive disorder, memory loss, and migraine without

aura.  Id. at 912-13.  Dr. Chellew recommended that Plaintiff continue outpatient therapy

and return to work on a part-time basis, initially one day per week and increasing as

tolerated.  Id. at 914.  The doctor also discharged Plaintiff from the clinic because "she's

not interested in medication at this time."  Id.

On January 2, 2020, state agency consultant John D. Chiampi, Ph.D., reviewed

Plaintiff's records as part of the initial disability determination.  Tr. at 323-27.  Dr.

---

[8]The essential feature of an adjustment disorder is "[t]he presence of emotional or behavioral symptoms in response to an identifiable stressor," and an adjustment disorder with anxiety is characterized predominantly by nervousness, worry, jitteriness, or separation anxiety.  DISM-5 at 287.

[9]Concerta (generic methylphenidate) is a nervous system stimulant used to treat attention deficit hyperactivity disorder.  See https://www.drugs.com/concerta.html (last visited May 9, 2023).  Atarax (generic hydroxyzine) is used as a sedative to treat anxiety and depression.  See https://www.drugs.com/atarax.html (last visited Apr. 23, 2023).

[10]"The essential features of [GAD] is excessive anxiety and worry (apprehensive expectation) about a number of events or activities," and where "[t]he intensity, duration, or frequency of the anxiety and worry is out of proportion to the actual likelihood or impact of the anticipated event."  DSM-5 at 222.

Chiampi assessed Plaintiff under the Listings for anxiety and somatic symptom and related disorders.  Id. at 323-24.  The doctor opined that Plaintiff has mild limitation in the ability to understand, remember, or apply information, and moderate limitation in the abilities to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  Id. at 323.  Regarding concentration and persistence, Dr. Chiampi assessed Plaintiff as markedly limited in the abilities to carry out detailed instructions, and moderately limited in the abilities to maintain attention and concentration for extended periods, perform activities within a schedule and maintain regular attendance, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  Id.  Regarding social interactions, the doctor found Plaintiff to be moderately limited in the abilities to interact appropriately with the public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Id. at 326-27.  Regarding adaptations, Dr. Chiampi assessed Plaintiff as moderately limited in the abilities to respond to changes in the work settling and to set realistic goals or make plans independently of others.  Id. at 327.  The doctor concluded that Plaintiff retains the capacity to perform basic routine tasks on schedule with adequate behavior and interaction.  Id.

In June 2020, JoAnne Butz, LPC, completed a psychotherapy intake notice following a suggestion that Plaintiff pursue therapy for conversion disorder.  Tr. at 1169.  Plaintiff reported being "sick off and on for the past 12 years," with various physical

symptoms of unknown causation, including headaches, fatigue, loss of speech, and paralysis, and she presented as "discouraged and somewhat resentful" about the counseling referral.  Id. at 1169, 1170.  Mental status examination revealed anxious mood, apathetic behavior, hesitant speech, and otherwise normal findings, including appropriate appearance, dress, affect, and thought content; unremarkable motor activity, perception, and flow of thought; fair insight and judgment; intact memory; and full orientation.  Id. at 1169.  Ms. Butz diagnosed conversion disorder, with mixed symptoms, and recommended a six-month program of biweekly therapy.  Id. ad 1170-71.  Psychotherapy progress notes from August 15, 2020, indicate that Plaintiff felt "okay except for physical complaints," id. at 1329, and on September 12, 2020, Ms. Butz assessed Plaintiff as improved and progressing in her treatment plan objectives.  Id. at 1332.

On August 6, 2020, state agency consultant Marci Cloutier, Ph.D., reviewed Plaintiff's records as part of the reconsideration disability determination.  Tr. at 338-42.  Dr. Cloutier indicated that Plaintiff has medically determinable impairments of migraine, which is non-severe, as well as severe impairments which do not satisfy the Listings for anxiety and somatic symptom and related disorders.  Id. at 338.  Dr. Cloutier agreed with Dr. Chiampi that Plaintiff has mild limitation in the ability to understand, remember, or apply information, and moderate limitation in the abilities to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  Id. at 339.  Similarly, Dr. Cloutier's mental RFC assessment contains the identical findings as Dr.

Chiampi.  Id. at 340-42.  Dr. Cloutier concluded that Plaintiff's impairments "would not preclude 1-2 step functions on a consistent basis." Id. at 342.

Plaintiff returned to neurology treatment in July 2020.  Tr. at 1192-96.  Plaintiff reported that she continued to have symptoms of left leg weakness and stuttering phases, which could occur daily or "go weeks and be ok," and her migraines had been "pretty good overall." Id. at 1192-93.

On September 25, 2020, Plaintiff saw William Jens, D.O., at the Penn State Hershey Medical Center, for treatment of ambulatory dysfunction, headaches, abnormal MRI, and neurologic complaints. Tr. at 1333-37.  Plaintiff reported her history of neurologic symptoms including frequent and severe headaches, fatigue, gait problems, trouble controlling her arms, and speech arrest.  Id. at 1333.  She denied depression and anxiety, and reported that her therapist did not believe she had a conversion disorder, but rather a functional neurologic disorder.  Id. at 1333-34.  On examination, Dr. Jens notes normal mood, affect, behavior, speech, judgment, thought content, and fund of knowledge, with intact attention, concentration, calculations, and recall.  Id. at 1335.  Dr. Jens noted that upon receiving recommendations from her providers, including modifications in diet, exercise, and added supplements, Plaintiff "became upset and was tired of receiving recommendations from providers without a diagnosis since she was looking for disability." Id. at 1336.  In a December 2020 follow-up, Dr. Jens noted that

he had started Plaintiff on Topiramate[11] for her headaches and that although the headaches persisted, they were not as severe.  Id. at 1342.  Plaintiff reported having another stuttering spell, and that her depression and anxiety had worsened.  Id.  Dr. Jens diagnosed a somatoform disorder, increased her Topiramate, and recommended she return to therapy.  Id. at 1345.

### C.    Other Evidence

At the January 26, 2021 administrative hearing, Plaintiff testified that she stopped working at the end of July 2019, because "all of my symptoms had gotten worse."  Tr. at 300.  She identified her symptoms as headaches ("regular" and migraine), difficulty concentrating and processing information, fatigue, and memory problems.  Id. at 300-01, 303.  Plaintiff described her "regular" headaches as lasting several hours almost every day, which make it hard to focus, and that she has two or three migraine headaches per week, lasting for one or two days each in duration.  Id. at 300-01.  She has not noticed a particular trigger for the headaches.  Id. at 302.  Plaintiff testified about a log she kept of when she stutters.  Id. at 305-06.[12]  She does not have problems dealing with other people

---

[11]Topiramate (marketed as Topamax) is a seizure medicine used to prevent migraine headaches in adults or reduce the number of attacks.  See https://www.drugs.com/topiramate.html (last visited Apr. 24, 2023).

[12]Questions and testimony during the administrative hearing appeared to suggest that Plaintiff's stutter began sometime in 2020.  See tr. at 305-06.  However, as noted in the medical summary, Plaintiff exhibited a noticeable stutter during the previous year, see, e.g., id. at 896 (10/22/19 - Dr. Keenan), and she submitted a speech log of purported stuttering episodes that began on September 30, 2018.  Id. at 544.  The log indicates that she experienced stuttering from that date through November 13, 2018; February 25 through April 7, 2019; August 26, 2019, through February 2020; March 22 through April 18, 2020; May 11 through May 17, 2020; and from November 28, 2020, onward.  Id.

except for loud noises or lots of talking.  Id. at 303.  Plaintiff testified that she experiences varying levels of weakness in her legs, which are sometimes so weak that she must "concentrate very hard to try to move them" and use a walker for support.  Id. at 306.  She does not drive because she does not know when she might lose control.  Id. She also has less frequent weakness in her hands and arms, which causes chores to take longer than they should.  Id. at 307.

Plaintiff testified that her memory and concentration problems impact her reading, stating that she "used to read a book a day and now I can't focus enough to even read [at] all."  Tr. at 303.  She further testified that "medication just makes it worse" because it causes dizziness and further aggravates numbness and tingling in her hands and feet.  Id. As of the date of the administrative hearing, Plaintiff took Topamax daily for the treatment of her migraines, as well as Vitamin B2.  Id. at 308.  She lives with her husband and has not taken any vacations or long trips since the onset date of her alleged disability. Id. at 309.[13]

The VE testified that Plaintiff's past relevant work as a lab assistant / data entry clerk was sedentary and semiskilled.  Tr. at 314.  The ALJ asked the VE to consider a

---

[13]Plaintiff's testimony is generally consistent with the symptoms and limitations described in her Function Report (tr. at 486-93) and Supplemental Function Questionnaire (id. at 494-96).  For example, Plaintiff reported extreme fatigue and difficulty concentrating and remembering, and indicated that her conditions affect, among other things, her memory, concentration, understanding, and ability to follow instructions.  Id. at 486, 491.  She also indicated that she could engage in hobbies, likes to read daily, and performs personal care and household tasks, which take longer to perform because of her conditions.  Id. at 487-90.  Plaintiff's testimony is also consistent with a daily log for the period August 2019 through January 2021, noting such things as weakness, pain, fatigue, headaches, and need for a walker.  Id. at 545-81.

hypothetical individual of Plaintiff's age, education, and work experience who could work at any exertional level, limited to occasional interaction with supervisors, the general public, and coworkers; no work involving shared tasks; a low stress job defined as having only occasional decision making, occasional changes in the work setting, and simple and routine tasks at a consistent pace but not at a production rate pace where each task must be completed within a strict time deadline; a moderate noise level; and no exposure to flashing or bright lights. Id. The VE responded that such an individual could not perform Plaintiff's past relevant work, but could perform unskilled work at various exertional levels, including cleaner of laboratory equipment (medium), routing clerk (light), and document preparer, micro filming (sedentary). Id. at 314-15.

In a second hypothetical, the ALJ added the limitation that the hypothetical person would be late, leave early, or be absent from work four times per month. Tr. at 315. The VE responded that such a person could not perform any work because the absences "would exceed all reasonable and customary tolerance." Id. at 315-16.

### D.    Consideration of Plaintiff's Claims

As previously noted, Plaintiff raises two claims related to the ALJ's RFC assessment; (1) the ALJ erroneously failed to include Plaintiff's inability to perform "detailed instructions" and failed to explain why he did not include that limitation, and (2) the RFC determination exceeds Plaintiff's abilities as established by the medical opinions of record. Docs. 8 & 10. Defendant responds that the ALJ's RFC determination is supported by substantial evidence. Doc. 9 at 3-15. I will address the claims together.

The RFC assessment is the most a claimant can do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, including those that are not severe.  Id. § 404.1545(a)(2).  However, the ALJ is not required to include every impairment a clamant alleges.  Rutherford, 399 F.3d at 554.  Rather, the RFC "must 'accurately portray' the claimant's impairments," meaning "those that are medically established," which "in turn means . . . a claimant's *credibly established limitations*."  Id. (emphasis in original) (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984), and citing Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002); Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999)).

"In making a[n RFC] determination, the ALJ must consider all evidence before [her]."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000).  Obviously, this includes medical opinion evidence, consideration of which is governed by regulations, in effect since March 27, 2017, that focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. § 404.1520c(a).[14]  The regulations list the factors to be utilized in considering

medical opinions:  supportability, consistency, treatment relationship including the length

and purpose of the treatment and frequency of examinations, specialization, and other

factors including familiarity with other evidence in the record or an understanding of the

disability program.  Id. § 404.1520c(c).  The most important of these factors are

supportability and consistency, and the regulations require the ALJ to explain these

factors, but do not require discussion of the others.  Id. § 404.1520c(b)(2).

The change in the regulations did not change the basic rule that "[t]he ALJ must

consider all the evidence and give some reason for discounting the evidence she rejects."

Plummer 186 F.3d at 429 (citing Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir.

1983)).  When there is a conflict in the evidence, the ALJ may choose which evidence to

credit and which evidence not to credit, so long as she does not "reject evidence for no

reason or for the wrong reason."  Rutherford, 399 F.3d at 554 (quoting Mason v. Shalala,

994 F.2d 1058, 1066 (3d Cir. 1993)); see also Plummer, 186 F.3d at 429 (same).

Here, as previously explained, the ALJ determined that Plaintiff retains the RFC to

perform a full range of work at all exertional levels, except that she is limited to

occasional interaction with supervisors, the general public, and coworkers; requires no

work involving shared tasks with coworkers; is restricted to low stress work, defined as

having only occasional decision making and only occasional changes in the work setting;

---

[14]The regulations governing applications filed before March 27, 2017, spoke in terms of the weight to be given each opinion, including controlling weight for the opinions of certain treating sources.  20 C.F.R. § 404.1527.

can perform simple, routine tasks at a consistent pace but not a production-rate pace; is

restricted to moderate-level noise; and can have no exposure to flashing or bright lights.

Tr. at 273.  In support of this RFC assessment, the ALJ summarized the medical record,

including treatment notes from Plaintiff's treating psychiatrist and counselors, id. at 276-

82, and then evaluated the opinion evidence as follows:

> The undersigned considers the October 2019 opinion of
> treating neurologist [Dr. Khaitov], who opined [Plaintiff] had
> conversion disorder with ambulatory dysfunction, weakness
> in both legs, chronic migraines, and an abnormal MRI.
> Symptoms included severe weakness, chronic fatigue,
> numbness and tingling, stuttering, a visual impairment,
> chronic pain, dizziness, chronic migraines, speech difficulty,
> memory issues, difficulty concentrating, anxiety and
> depression. . . .   Emotional factors of depression and anxiety
> contributed to her limitations; she also had conversion
> disorder. . . .   She had a severe limitation in dealing with work
> stress. . . .   She would have good days and bad days,
> prompting absences about twice a month.  These limitations
> [existed] since her hospital admission in July 2019.  [Tr. at
> 709-15.]  This opinion is minimally persuasive.  Dr. Khaitov
> provided this assessment only three months after [Plaintiff's]
> hospitalization.  Moreover, it is not supported by his August
> 2019 follow up notes. . . .   [Id. at 696-708.]  Instead, the
> undersigned relies on the longitudinal evidence, which
> supports mental health diagnoses with associated physical
> symptoms, in limiting [Plaintiff] non-exertionally.  Moreover,
> the undersigned considers Dr. Khaitov's diagnoses of
> migraines in limiting [Plaintiff] to moderate noise and to no
> exposure to flashing or bright lights.  [Id. at 588-695, 696-
> 708.]
>
> . . . .
>
> The undersigned considers the January 2020 opinion of State
> psychological consultant [Dr. Chiampi], who opined
> [Plaintiff] had mild limitations in understanding,
> remembering, and applying information; moderate limitations
> in interacting with others; moderate limitations in

18

concentration, persistence, or pace; and moderate limitations in adapting and managing oneself.  He noted [Plaintiff] was diagnosed with anxiety and conversion disorder with a history of receiving outpatient psychiatric treatment, medication management, and brief psychotherapy.  She presented with a stable mental status and reported performing basic activities of daily living independently.  He opined she was capable of performing basic routine tasks in a schedule; had adequate social skills; could cope with anxiety and conversion with a stable mental status.  He concluded she retained the capacity to perform basic routine tasks in schedule with adequate behavior and interaction.  [Tr. at 320-29.]   On reconsideration in August 2020, State psychological consultant [Dr. Cloutier] agreed with Dr. Chiampi's assessment of [Plaintiff's] limitations; she concluded [Plaintiff's] impairments would not preclude one- to two-step functions on a consistent basis.  [Id. at 331-44.]  These opinions are partially persuasive.  The undersigned agrees the longitudinal evidence supports mild to moderate mental limitations given [Plaintiff's] generally benign mental status examinations.  [Id. at 588-695, 894-907, 908-27, 1169-77, 1327-32.]  Mild to moderate limitations are also consistent with retained abilities to engage in hobbies, perform personal and household tasks, and failure to engage in follow-up with recommended lifestyle modifications and treatment.  [Id. at 486-500, 509-21, 908-27, 1327-32, 1333-55.]  However, the undersigned concludes these limitations are more consistent with restrictions to occasional interaction with supervisors, the general public, and with coworkers; no work involving shared tasks with coworkers; work in a low stress job, defined as having only occasional decision making and only occasional changes in the work setting; and performing simple, routine tasks at a consistent pace but not a production-rate pace where each task must be completed with a strict time deadline.

Id. at 282-83.  Based on the "longitudinal evidence of record," the ALJ concluded that the RFC assessment adequately accommodated the mild to moderate restrictions caused by Plaintiff's conversion disorder, somatoform disorder, adjustment disorder, and limitations attributable to her migraines.  Id. at 284.

Plaintiff argues that the ALJ's RFC assessment is flawed because the ALJ failed to preclude Plaintiff from jobs involving "detailed instructions," based on the opinions of state agency consultants Dr. Chiampi and Dr. Cloutier that Plaintiff was "markedly limited" in the ability to carry out detailed instructions, and that the ALJ compounded this error of omission by failing to explain why she omitted the limitation.  Doc. 8 at 4-8; Doc. 10 at 2-4.[15]

As previously summarized, state psychiatric consultants Dr. Chaimpi and Dr. Cloutier -- the only two medical experts who provided mental RFC assessments -- both found that Plaintiff was "markedly limited" in the ability to carry out detailed instructions.  Tr. at 326, 339.  Dr. Cloutier further found that Plaintiff would be able to perform "1-2 step functions."  Id. at 342.  The ALJ found the consultants' opinions to be "partially persuasive," and concluded that the limitations they found were "more consistent with restrictions [to] performing simple, routine tasks at a consistent pace but not a production-rate pace where each task must be completed within a strict time deadline."  Id. at 283.  However, as reflected in the above-quoted passage, and despite an otherwise thorough review of the medical record, the ALJ did not mention the consultants' findings regarding a marked limitation in the ability to carry out detailed instructions anywhere in her opinion -- not in the summary of the evidence, the evaluation of these doctors' opinions, the RFC assessment, or in the hypothetical presented to the VE.  Instead, in stating that she agreed with both doctors that Plaintiff

---

[15]Plaintiff does not take issue with the ALJ's consideration of neurologist Dr. Khaitov's opinions, some of which concerned Plaintiff's mental impairments.

had "mild to moderate mental limitations," id., the ALJ mischaracterized the doctors'

opinions that Plaintiff was medically limited in the ability to carry out detailed

instructions.  Id.  The ALJ did acknowledge Dr. Cloutier's finding that Plaintiff could

perform one -to- two-step functions, but did not adopt that restriction or reference the

marked limitation that was the basis for it.  Id.

      The ALJ's omission is problematic.  First, because the ALJ failed to mention the

opinion evidence that Plaintiff would be markedly limited in the ability to carry out

detailed instructions, the ALJ failed to consider that such a person would typically be

limited to one -to- two-step functions.  See Upshur v. Colvin, 200 F.Supp.3d 503, 511-12

(E.D. Pa. 2016) (explaining jobs with reasoning level 1 require the ability "to carry out

simple one- or two-step instructions" and jobs with reasoning level 2 require the ability

"to carry out detailed but uninvolved written or oral instructions") (quoting Dictionary of

Occupational Titles, Appx. C – Components of the Definition Trailer, 1991 WL

688702)).  While Defendant is correct in asserting that the distinction between an RFC

for simple, routine tasks (as found by the ALJ here) and one for one -to- two-step tasks is

unsettled in the Third Circuit, see Doc. 9 at 8-10, the majority of courts have found the

distinction to be meaningful.  See, e.g., Maher v. Saul, Civ. Action No. 19-5721, 2020

WL 5876808, at *5 (E.D. Pa. Sept. 9, 2020) (limitation to "simple, routine, repetitive

tasks" is not the same as more restrictive limitation to "one- and two-step tasks"), Report

and Recommendation adopted, 2020 WL 5849466 (Oct. 1, 2020); Podunajec v. Saul, Civ.

Action No. 19-1938, 2020 WL 7319779, at *6 (M.D. Pa. Dec. 11, 2020) ("[T]he Court

finds that there is a significant difference between an RFC limitation to one and two step

tasks and an RFC limitation to simple, routine tasks.") (citing, inter alia, Harden v. Comm'r of Soc. Sec., Civ. Action No. 13-906, 2014 WL 4792294, at *4-5 (W.D. Pa. Sept. 24, 2014) (remand where limitation to unskilled work involving routine and repetitive instructions did not account for limitation to short and simple instruction of one -to- two steps)); Booker v. Colvin, Civ. Action No. 14-4984, 2017 WL 914911, at *6 (E.D. Pa. Mar. 7, 2017) ("[U]nskilled work may, for some jobs, require the ability to understand and remember detailed instructions, as opposed to only simply instructions.") (citing Smith-Schaeffer v. Comm'r of Soc. Sec., Civ. Action No. 12-1374, 2013 WL 1962668, at *7 (W.D. Pa. May 10, 2013)); see also Alvarado v. Colvin, 147 F.Supp.3d 297, 305-06 (E.D. Pa. 2015) (unskilled jobs can require reasoning level 2, which requires ability to carry out detailed instructions).

Second, the ALJ's failure to mention or discuss a marked limitation in the ability to carry out detailed instructions cannot be deemed harmless under the circumstances of this case. As previously noted, the opinions of the psychiatric consultants in this regard are uncontroverted, as there are no other mental RFCs contained in the record, and the ALJ found their opinions to be partially persuasive. Additionally, whereas a marked limitation in the ability to carry out detailed instructions strongly suggests that Plaintiff would be limited to jobs with level 1 reasoning, as explained above, the VE did not testify as to the reasoning level of the jobs she identified. Tr. at 315.[16] Finally, the only

---

[16]The VE testified that each of the identified jobs had a Specific Vocational Preparation ("SVP") level of 2. Tr. at 285, 315. SVP level 2 corresponds to unskilled work. See S.S.R. 00-4p, "Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability

additional evidence specifically relating to Plaintiff's ability to follow instructions is contained in Plaintiff's Functional Report, wherein Plaintiff explained that she can follow written instructions "pretty well if I can understand it," and can follow spoken instructions "maybe 1 or 2 steps. I forget and usually can't follow." Id. at 491.

As Plaintiff additionally argues, see Doc. 8 at 7-8, the ALJ compounded her error of omission by not explaining why she failed to include the limitation. Such a failure requires remand. See, e.g. Maher, 2020 WL 5876808, at *6 (where ALJ found limitations to, among other things, simple, routine, repetitive tasks, ALJ was obligated to explain whether he accepted or rejected state psychiatric consultant's narrower limitation to one-and two-step tasks, and to provide rationale for his decision); Harden, 2014 WL 4792294, at *4 ("The RFC and hypothetical are not supported by substantial evidence because it is not clear whether the omission of any limitation to one or two-step jobs was intentional or not. While the ALJ was buy no means required to simply adopt all of the limitations found by the state reviewing agent, he was required to explain his basis for rejecting them if he chose to do so."). Finally, the failure to provide any reason for rejecting the limitation violates the requirement that an ALJ not "reject evidence for no reason." Rutherford, 399 F.3d at 554; Plummer, 186 F.3d at 429. The ALJ's reference to her consideration of the "longitudinal evidence," tr. at 283, and the Defendant's argument that the ALJ's RFC assessment was "based on a review of the entire record," Doc. 9 at 10, cannot remedy the ALJ's failure to explain why she neglected to mention opinion

---

Decisions," 2000 WL 1898704, at *3. As previously explained, unskilled work may, for some jobs, involve detailed instructions.

evidence regarding a marked limitation in Plaintiff's ability to follow detailed instructions, particularly where she found the opinion evidence "partially persuasive."

In a related argument, Plaintiff argues that the ALJ's RFC determination exceeds Plaintiff's functional capacity. Doc. 8 at 7-18; Doc. 10 at 1-2. Because remand of this matter for proper consideration of Plaintiff's ability to carry out detailed instructions could change the ALJ's RFC assessment and conclusion at step five, I do not find it necessary to address this claim.

## V.    **CONCLUSION**

The ALJ failed to acknowledge a finding of marked limitation in Plaintiff's ability to carry out detailed instructions made by the only two doctors who rendered opinions regarding Plaintiff's mental RFC, and failed to explain why she omitted the marked limitation from her RFC assessment and hypothetical to the VE. Because the court is left to guess whether the ALJ overlooked or purposely omitted that limitation, it follows that the ALJ's RFC assessment, and therefore the ALJ's step five determination, is not supported by substantial evidence.

An appropriate Order follows.